UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENISE M. WOMBLE,

    Plaintiff,

v.                                          Case No:       8:15-cv-1328-T-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

**OPINION AND ORDER**

Plaintiff, Denise M. Womble, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and Disability Insurance Benefits ("DIB"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number) and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

        **A.**    **Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *see* 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. §§ 1520(a)(4)(iv), 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the

use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d at 1278 n.2.

### C.  Procedural History

Plaintiff filed an application for a period of disability and DIB on December 8, 2011, alleging disability beginning July 23, 2008. (Tr. 175). Plaintiff's application was denied initially on January 9, 2012, and upon reconsideration on February 16, 2012. (Tr. 97, 109). Plaintiff requested a hearing and, on October 31, 2013, a hearing was held before Administrative Law Judge Julia D. Gibbs. (Tr. 25-69). On January 8, 2014, the ALJ entered her decision finding that Plaintiff was not disabled. (Tr. 11-24). Plaintiff requested review of the hearing decision and, on April 8, 2015, the Appeals Council denied Plaintiff's request for review. (Tr. 1). Accordingly, the ALJ's decision became the Commissioner's final decision. Plaintiff initiated the instant action by Complaint (Doc. 1) filed on June 3, 2015.

### D.  Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 23, 2008, the alleged onset date. (Tr. 13). At step two, the ALJ found that Plaintiff had a single severe impairment, "back disorder." (Tr. 13). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 14).

Before proceeding to step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) except the

claimant can work with the usual and customary environmental limitations (avoid excess exposure to fumes, gases, chemicals, perfumes etc. in a clean environment)." (Tr. 14). At step four, the ALJ found that Plaintiff was incapable of returning to her past relevant work as a glazier and small business owner. (Tr. 17).

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, specifically the jobs of "office helper," "merchandise marker," and "inspector." (Tr. 18). The ALJ made this finding by relying on the testimony of a vocational expert. (Tr. 18). The ALJ concluded that Plaintiff had not been under a disability from July 23, 2008, through the date of the decision, January 8, 2014. (Tr. 19).

## II.     Analysis

Plaintiff raises three issues on appeal: (1) whether the ALJ erred in her treatment of Plaintiff's mental impairment; (2) whether the ALJ erred by failing to articulate good cause for not crediting the opinions of Plaintiff's treating physicians Dr. Fine and Dr. Wiseman; and (3) whether the ALJ erred in her treatment of Plaintiff's irritable bowel syndrome and upper extremity tremors. (Doc. 16 p. 1). The Court will address each issue in turn.

### a)  Whether the ALJ erred in her treatment of Plaintiff's mental impairment.

Plaintiff argues that the ALJ failed to comply with the applicable regulations in analyzing Plaintiff's mental impairment and also erred in minimizing the severity of her depression. (Doc. 16 p. 9). Plaintiff contends that she presented a colorable mental impairment, thus requiring the ALJ to evaluate the severity of her mental impairment by application of the Psychiatric Review Technique Form as set forth in 20 C.F.R. § 404.1520a. (Doc. 16 p. 10). Plaintiff argues the ALJ's failure to do so constitutes reversible error. (Doc. 16 p. 11).

Defendant responds that Plaintiff failed to meet her burden of proving that she had a colorable claim of a mental impairment. (Doc. 17 p. 2). Defendant contends that Plaintiff never complained about a mental impairment to her primary care doctor and that the record contains only two mentions of depression. (Doc. 17 p. 5).

In her decision, the ALJ explained her reasoning for finding that Plaintiff's alleged depression was not a severe impairment:

> The claimant complained of being depressed but records indicate that she had not even discussed the alleged condition with her primary care doctor (Ex. 21F, p. 3). There is insufficient evidence to find that the claimant experiences any mental impairment related limitations. The record, spanning more than 5 years, is devoid of any mental impairment allegations until the claim was denied at the reconsideration level. There are some treatment notes dated September 2013, a month prior to the hearing, indicating that the claimant saw a mental health provider. However, the notes are wrought with the claimant's allegations of physical impairments. The provider noted that the claimant presented with "complaints of extensive physical disabilities." (Ex. 32F). Non exertional limitations were provided however those limitations are based primarily on the claimant's subjective complaints (Ex. 30F). The undersigned finds the allegations are unsupported by the record and accords little weight to the alleged limitations.

(Tr. 13-14).

Eleventh Circuit law provides that "where a claimant has presented a colorable claim of mental impairment, the Social Security Regulations require the ALJ to complete a [Psychiatric Review Technique Form], append it to the decision, or incorporate its mode of analysis into his findings and conclusions." *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005). This technique requires separate evaluation on a four-point scale of how the claimant's mental impairments impact four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* at 1213-14. The ALJ is

required to incorporate the results of this technique into the findings and conclusions. 20 C.F.R. § 404.1520a-(e)(2).

In this case, the record reveals that Plaintiff's alleged depression is mentioned just twice in the medical record. Plaintiff's alleged depression is first mentioned by Kenneth A. Giraldo in a May 2012 treatment. Dr. Giraldo noted that "[f]or [Plaintiff's] back pain and depression, I started Cymbalta 30 mg, 60 tablets, 1 tablet q.a.m. p.o., to increase by 1 tablet after a week to 2 tablets q.a.m. with 1 refill." (Tr. 488). Dr. Giraldo did not include depression in his list of diagnostic impressions. (Tr. 488). Plaintiff's depression is again mentioned in the "summary" of the therapy she had received from therapist Patricia Musselwhite-Weaver, M.A., L.M.H.C. (Tr. 563-64). Ms. Musselwhite-Weaver noted that Plaintiff had seen her thirteen times since March 2013 for individual psychotherapy due to complaints of extensive physical disability, with grief, depression, and anxiety. (Tr. 563). As Defendant correctly notes, however, the record does not contain any actual mental health treatment records and there is no evidence of a clinical diagnostic technique evaluating Plaintiff's depression.

A claimant bears the ultimate burden of proving disability and is response for furnishing or identifying medical or other evidence regarding her impairments. *Bowen v. Yuckert*, 482 U.S. at n. 5 (1987); *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Here, the Court finds that the paucity of the evidence in the record failed to give rise to a colorable claim of mental impairment. *See Sesberry v. Astrue*, 2010 WL 653890, at *3-5 (M.D. Fla. Feb. 18, 2010) (finding that the plaintiff failed to present a colorable claim of mental impairment where the record contained two notations "hinting" of the possibility the claimant had a mental impairment, a referral to a psychiatrist, and a prescription for an antidepressant); *Kellerman v. Astrue*, 2009 WL 3586554, at *7 (M.D. Fla. Oct. 28, 2009) (finding

that plaintiff failed to present a colorable claim of mental impairment by citing to only a single treatment note showing plaintiff had been off medication for depression for one year and a new antidepressant was prescribed.). Accordingly, the Court finds that the ALJ did not err by refraining from completing a Psychiatric Review Technique Form.

> **b) Whether the ALJ erred by failing to articulate good cause for not crediting the opinions of Plaintiff's treating physicians Dr. Fine and Dr. Wiseman.**

Plaintiff argues the ALJ erroneously minimized Plaintiff's lumbar spine impairment and failed to articulate good cause for not crediting the opinions of Dr. Fine and Dr. Wiseman as far as the impact and severity of the lumbar spine MRI findings in 2008 and 2011. (Doc. 16 p. 13-14). Plaintiff contends that the ALJ inaccurately gives the impression that the lumbar spine MRI findings did not reveal significant objective findings, while both Dr. Wiseman and Dr. Fine agreed that the lumbar spine MRI findings were significantly more severe than the ALJ believed. (Doc. 16 p. 14).

Defendant argues that the ALJ provided specific reasons supported by substantial evidence, for giving little weight to the opinions of Dr. Fine and Dr. Wiseman. (Doc. 17 p. 8). According to Defendant, the ALJ properly noted that the severe and disabling limitations Dr. Fine and Dr. Wiseman opined were inconsistent with the medical evidence. (Doc. 17 p. 8).

The record shows that Dr. Fine completed a medical source statement on Plaintiff's behalf on April 27, 2012. (Tr. 466-468). Dr. Fine opined that Plaintiff could sit for one hour total in an eight hour day, and when seated, her feet needed to be elevated. (Tr. 466). She could only stand or walk for one hour total in an eight hour day and needed to rest for some period of time during an eight hour workday to relieve pain and fatigue. (Tr. 466). During an eight hour workday, she would need to rest lying down or reclining in a supine position for six hours out of an eight hour workday and could not engage in lifting as part of an eight hour workday. (Tr. 467). She could

rarely balance or stoop. (Tr. 467). Plaintiff's diagnosis was lumbar spondylolisthesis and foot drop as per MRI, physical examination, and physical therapy results. (Tr. 468). In his progress date the same day as the medical source statement, Dr. Fine wrote that Plaintiff continued to have severe back pain and had developed a foot drop on the right side. (Tr. 490). Plaintiff's foot drop resulted in her dragging her foot when she walked on carpets. (Tr. 490). Plaintiff was unable to sit or stand for more than fifteen minutes at a time without changing positions which made her a poor candidate for pursuit of a new job. (Tr. 491).

As to the opinion of Dr. Wiseman, the record shows that on December 17, 2012, Dr. Wiseman completed a medical source statement on Plaintiff's behalf. (Tr. 515-18). Dr. Wiseman found that Plaintiff could sit for one hour total in an eight hour day, and when seated, her feet needed to be elevated. (Tr. 515). She could only stand or walk for one hour total in an eight hour day and needed to rest for some period of time during an eight hour workday to relieve pain and fatigue. (Tr. 515). During an eight hour workday, Plaintiff would need to rest lying down or reclining in a supine position for six hours out of an eight hour workday and could rarely lift and carry. (Tr. 516). She could rarely balance or stoop. (Tr. 516). She was diagnosed with degenerative lumbar spine disease and spondylolisthesis as per MRI, physical examination, and physical therapy results. (Tr. 516). Dr. Wiseman noted that Plaintiff had significant lumbar degenerative spine problem with spondylolisthesis "which really inhibits her ability to sit for any length of time" and also "impair[ed] her ability to lift anything. (Tr. 518).

On November 6, 2013, Dr. Wiseman prepared another assessment on Plaintiff's behalf. (Tr. 583-84). Dr. Wiseman noted that Plaintiff had been treated for several years and suffered from multiple maladies which together caused severe disability and precluded her ability to work in any meaningful way. (Tr. 583). She had severe fibromyalgia that caused chronic pain and

aching and had degenerative back disease, with slippage of one vertebra over the other and significant narrowing of the openings where the spinal nerves come out, causing numbness in the right leg as well as significant pain. (Tr. 583). She had severe irritable bowel syndrome that was managed with Levsin. (Tr. 583). Plaintiff still had severe cramping, bloating and alternating diarrhea with constipation which compromised her ability to work, as well as recurrent asthmatic bronchitis as well as hypersensitivity to many environmental odors. (Tr. 583). Dr. Wiseman further noted that Plaintiff had been quite refractory to medical management and was fully disabled from meaningful employment. (Tr. 584).

In her opinion, the ALJ accorded little weigh to the opinions of Dr. Fine and Dr. Wiseman. The ALJ explained that Dr. Fine's opinion was rendered at a time when Plaintiff had not received treatment for almost four years and Dr. Fine admitted when Plaintiff first presented to him in January 2012 that he had not seen Plaintiff in several years. (Tr. 17). Further, the ALJ explained that treatment records do not support the limitations Dr. Fine proposed, noting that Dr. Fine himself recommended only conservative treatment to include physical therapy. (Tr. 17). The ALJ also noted that at the time Dr. Fine completed the medical source statement he advised Plaintiff to follow-up with him in ten weeks, a period which, according to the ALJ, one would not expect if Plaintiff's condition was severe as alleged. (Tr. 17). The ALJ also remarked that Dr. Fine's notes relied heavily on Plaintiff's subjective complaints and lack the clinical/objective support to corroborate his proposed RFC. (Tr. 17). As to Dr. Wiseman's opinion, the ALJ explained that it was rendered during a time of virtually no treatment and the only intervening records provided related to Plaintiff's complaints of nipple irritation, rosacea, and negative ANA testing. (Tr. 17). The ALJ stated that she accorded more weight to the state agency medical consultant's opinion that Plaintiff retained the RFC to perform light exertional work. (Tr. 17).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc Sec.,* 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)). The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when the: "treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id*.

In this case, the Court finds that the ALJ's decision to accord little weight to the opinions of Dr. Fine and Dr. Wiseman was supported by substantial evidence. The ALJ properly noted that there is no record of treatment for Plaintiff's back impairment between 2008 and 2011, despite Plaintiff's reports of her symptoms progressing after physical therapy had improved her back pain and functioning in 2008. (Tr. 15-16, 252, 254, 288). Despite progression in her symptoms, the record shows that Plaintiff's functioning remained intact. (Tr. 15-16). In December 2011, Plaintiff's lower extremity motor strength and reflexes were intact, and she exhibited positive

straight leg raise testing only on the right. (Tr. 323-24). In January 2012, Plaintiff exhibited normal motor strength, was able to ambulate on her heels and toes without difficulty, and her sensation was intact. (Tr. 461). In May 2012, Plaintiff again exhibit intact sensation and "4/5" muscle strength. (Tr. 488). In June 2012, Plaintiff complained of footdrop, but her examiner found that she did not exhibit it on examination. (Tr. 534). Plaintiff was able to, heel, and tandem walk without difficulty, her sensation was intact, and her motor strength was 5/5. (Tr. 535). In January 2013, Plaintiff continued to exhibit normal sensation and motor strength. (Tr. 483). Given this evidence, the Court cannot find that the ALJ was incorrect in finding that the severe and disabling limitations opined by Dr. Fine and Dr. Wiseman were inconsistent with the medical record. The ALJ articulated good cause for her decision to discount Dr. Fine and Dr. Wiseman's opinions. Accordingly, the Court will not disturb the ALJ's findings on appeal.

    c) **Whether the ALJ erred in her treatment of Plaintiff's irritable bowel syndrome and upper extremity tremors.**

Plaintiff argues that the ALJ erred by failing to properly evaluate Plaintiff's irritable bowel syndrome and upper extremity tremors. (Doc. 16 p. 22). Defendant responds that substantial evidence supports the ALJ's finding that these conditions did not cause functional limitations. (Doc. 17 p. 9-10).

In her decision, the ALJ noted that Plaintiff alleged frequent and immediate necessity to use the restroom but that the record "contains an assessment of IBS with no treatment or resulting limitations." (Tr. 14). The ALJ did not mention Plaintiff's upper extremity tremors.

Here, the Court finds that the ALJ did not commit reversible error in his treatment of Plaintiff's irritable bowel syndrome and upper extremity tremors. "[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work."

*Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). While Plaintiff contends that her irritable bowel syndrome would cause her to use the bathroom repeatedly on an unpredictable basis, she provides no evidence showing that her irritable bowel syndrome caused her to have limitations greater than found by the ALJ. The same is true for Plaintiff's upper extremity tremors. "[T]he mere existence of [an impairment] does not reveal the extent to which [it] limits [a claimant's] ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005). Plaintiff failed to carry her burden of demonstrating that her irritable bowel syndrome and upper extremity tremors affected her RFC greater than determined by the ALJ. Accordingly, the Court finds that the ALJ did not commit reversible error and that the Commissioner's decision is due to be upheld.

### III.    Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 19, 2016.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties